

FILED & JUDGMENT ENTERED
Steven T. Salata

Feb  17  2016

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| Roy Gwyn Johnson ) | Case Number: 15-50053 |
| Linda Prevette Johnson, ) | |
| ) | Chapter 13 |
| Debtors. ) | |
| ) | |

## ORDER GRANTING MOTION FOR SANCTIONS

This matter is before the Court on the Debtors' Motion For Sanctions (the "Motion") which was filed on August 17, 2015. This matter was heard on January 8, 2016. Thomas C. Flippin was present on behalf of Roy Gwyn and Linda Prevette Johnson (the "Debtors") and Steven G. Tate appeared in his capacity as Chapter 13 Trustee. After considering the Motion, the evidence presented, and the arguments of counsel, the Court finds as follows:

### FINDINGS OF FACT

1. The Debtors filed a petition under Title 11, Chapter 13 of the Bankruptcy Code on January 30, 2015, and the plan has been confirmed.

2. The Debtors listed Nationstar Mortgage, LLC ("Nationstar") as a creditor in their case and scheduled Nationstar on Schedule D as having a secured claim. On August 17, 2015,

the attorney for the Debtors filed a proof of claim on behalf of Nationstar reflecting a total secured claim in the amount of $56,317.00 and a pre-petition arrearage claim of $0.00. Nationstar has not disputed that claim and even referred to it has having been filed by Nationstar in its January 5, 2016, motion for relief from stay.

3. Nationstar services the mortgage on the Debtors' home, and pursuant to the Debtors' Chapter 13 Plan, the post-petition mortgage payments are paid to Nationstar by the Chapter 13 Trustee as a conduit mortgage payment.

4. The Debtors' schedules show they were current on their mortgage payment to Nationstar at the time of the filing of their bankruptcy petition, and the Debtors testified to this fact at the hearing on the Motion. In addition, according to the records maintained by Steven G. Tate, the standing Chapter 13 Trustee, the Debtors have made all payments pursuant to their confirmed Chapter 13 plan. At the time of the hearing on this matter, the Debtors were actually ahead on their plan payments. Thus, it appears the Debtors were current on their mortgage payments before they filed bankruptcy and they have remained current since their case was filed.

5. The Debtors testified that in February 2015, shortly after having filed for bankruptcy relief, they started receiving phone calls from Nationstar. The caller identification on the Debtors' answering machine showed "NATIONSTAR." When the Debtors attempted to answer the calls, the line went dead on all but two occasions. On those two occasions, Mr. Johnson spoke to a representative from Nationstar. In both conversations, Mr. Johnson informed the Nationstar representative of the fact that he and his wife were in an active Chapter 13 bankruptcy case. One of the representatives with whom Mr. Johnson spoke around March 2015 assured him that they would refer the matter to their bankruptcy department, yet the calls persisted. Remarkably, the Johnsons testified that these phone calls began in mid-February and

lasted over six months at a rate of three to four calls a day, seven days a week. The calls finally stopped after Mr. Johnson spoke to a representative of Nationstar in August 2015.

6. On at least three occasions, Nationstar sent representatives to the Debtors' home to take photographs. On all three occasions, Mr. Johnson was present, and he informed the representative of Nationstar that he and his wife were in an active Chapter 13 bankruptcy case.

7. The Debtors testified that after they filed bankruptcy, they received at least two letters from Nationstar. Each letter indicated that the mortgage account was not current, and one of them reflected that the Debtors were over $4,000.00 in arrears. The letter dated March 25, 2015, from Nationstar's Loss Mitigation Department informed the Debtors that "[f]ailure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

8. In fact, a Wilkes County Deputy Sheriff served a Notice of Foreclosure on their home in August 2015. A Notice of Hearing on Foreclosure of Deed of Trust was filed in Wilkes County on August 10, 2015, which scheduled a foreclosure hearing for September 24, 2015. Both Debtors testified that between the repeated phone calls, letters, visits by Nationstar representatives, and notice of foreclosure, they became distraught because they were convinced they were about to lose their home despite being current on their mortgage payments.

9. Mrs. Johnson testified that Nationstar's constant harassment caused her anxiety, loss of sleep, stress and depression. She indicated that the situation with Nationstar caused her to have to begin taking an anti-anxiety medication on a regular basis so she could sleep at night. In addition, she testified that she became very concerned for her husband because the phone calls from Nationstar were beginning to take a toll on his health.

10. Mr. Johnson indicated that before filing bankruptcy he had high blood pressure and diabetes. He testified that Nationstar's harassment exacerbated those conditions and caused

3

him to experience loss of sleep and increased stress. According to Mr. Johnson, the situation with Nationstar made his blood pressure spike and caused him to have to visit his doctor to seek medication for his nerves. Mrs. Johnson testified that the added stress of Nationstar's persistent harassment caused Mr. Johnson to suffer more frequent and severe Agent Orange attacks.

11. While neither of the Debtors are employed and did not have to take time off from work to attend the hearings on the Motion, they incurred travel costs driving to Statesville from their home in Wilkesboro and back the three times this matter was scheduled for hearing.

12. Nationstar was put on notice of the filing of this bankruptcy case in the following ways:

    a. The Debtors' counsel mailed the plan to Nationstar on January 30, 2015 (through the mailing service, Certificate of Service.com).

    b. The Court, through the Bankruptcy Noticing Center, mailed a Notice of 341(a) Meeting to Nationstar on February 6, 2015.

    c. The Court, through the Bankruptcy Noticing Center, mailed the Order Confirming Chapter 13 Plan to Nationstar on June 12, 2015.

    d. The Debtors informed agents of Nationstar verbally of their bankruptcy filing on several occasions.

    e. The Debtors' counsel mailed a letter to Nationstar warning them of sanctions if they continued to violate the automatic stay on April 13, 2015.

    f. The Chapter 13 Trustee has made monthly payments to Nationstar for the scheduled mortgage account, and none of those payments has been returned to the Trustee.

13. The Debtors initially scheduled this matter for hearing on October 9, 2015. The matter was continued twice for Nationstar to be noticed at additional addresses. Nationstar did not file a response to the Motion nor did it appear at the hearing on the Motion. Ironically, Nationstar filed a Notice of Appearance on December 31, 2015 and a motion for relief from stay on January 5, 2016. Based on a review of the docket, it appears Nationstar withdrew the motion for relief from stay on January 25, 2016 after the hearing on the Motion for Sanctions.

14. Debtors' counsel filed an affidavit on February 1, 2016 that shows the Debtors incurred $3,297.23 in legal fees and expenses associated with the Motion.

**CONCLUSIONS OF LAW**

15. The automatic stay of 11 U.S.C. § 362(a) becomes effective when a bankruptcy petition is filed, and the stay remains in force throughout the pendency of the case unless the court orders otherwise. In re Riddick, 231 B.R. 265, 267 (Bankr. N.D. Ohio 1999). A key aim of the automatic stay is "to prevent creditors from making demands and collection efforts against the economically disadvantaged debtor." In re Barnes, No. 00-50829, slip op. at 6 (Bankr. W.D.N.C. Jan. 29, 2001) (citations omitted). Consistent with this goal, the automatic stay applies to: (i) "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the [bankruptcy case]"; (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"; (iii) "any act to . . . enforce any lien against property of the estate"; (iv) "any act to . . . enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the [bankruptcy case]"; or (v) "any act to collect, assess, or recover a claim against the debtor that arose before the [bankruptcy case]." § 362(a)(1), (3)–(6).

5

16.     For "willful" violations of the automatic stay, a debtor is entitled to "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages." § 362(k).

17.     An automatic stay violation is "willful" when the creditor's conduct is " 'intentional and deliberate.' " Barnes, slip op. at 7 (quoting Budget Serv. Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292 (4th Cir. 1986)).  A creditor "intentionally and deliberately" violates the stay when the creditor has notice of the bankruptcy and takes an action that is prohibited by the stay despite the notice.  Riddick, 231 B.R. at 267; Barnes, slip op. at 7.  A creditor that ignores notice of a bankruptcy case does so at its own risk, and a creditor that shows a "cavalier approach" to a bankruptcy notice by continuing collection attempts will be culpable for a "willful" violation of the automatic stay.  In re Wilson, No. C-B-89-31560, slip op. at 1–2 (Bankr. W.D.N.C. June 28, 1990); see Barnes, slip op. at 9 (noting that the violation of the automatic stay was "willful" notwithstanding the creditor's purported confusion as to the stay's applicability).

18.     "Where a willful violation forces a debtor to resort to court intervention to enforce [his or] her rights, an award of attorney fees is appropriate."  Riddick, 231 B.R. at 268 (citations omitted).

19.     The "appropriate circumstances" for punitive damages under § 362(k) exist when "a willful violation of the stay occurs by way of egregious or vindictive conduct."  Barnes, slip op. at 10 (citation omitted).  An example of behavior that warranted punitive damages may be found in In re Riddick, 231 B.R. 265, a decision from the Bankruptcy Court for the Northern District of Ohio.  In Riddick, the creditor attempted to collect on a pre-petition debt six times after receiving notice of the bankruptcy in violation of the automatic stay, and the Riddick court

6

awarded punitive damages as a result. Id. at 269. In addition to its concern with the creditor's disregard of the bankruptcy notice, the Riddick court also found it problematic that the creditor failed to explain its actions or to attend the hearing on its conduct. See id. at 268 (noting that the creditor "chose not to appear at the scheduled hearing nor to demonstrate in any manner that it should not be held liable [for its employee's] actions").

20. In determining the amount of a punitive damages award, the court is primarily concerned with changing the behavior that resulted in the stay violation, so the amount awarded should motivate the creditor to correct its conduct. Id. at 269. Deterrence to others may be a relevant factor as well. Id. In Riddick, the court ultimately ruled that punitive damages of $500.00 per contact were appropriate. Id.

21. In the instant case, Nationstar received notice of the Debtors' bankruptcy case multiple times and in various ways. Nationstar was served with the bankruptcy petition on January 30, 2015, the § 341 meeting of creditors notice on February 6, 2015, and the confirmation order on June 12, 2015. Mr. Johnson informed representatives from Nationstar of the bankruptcy over the phone as well as in person when Nationstar attempted to take photos of the Debtors' home. The Debtors' attorney sent Nationstar a letter on April 13, 2015 advising that its conduct violated the automatic stay. Perhaps the most telling indicator that Nationstar had notice of this bankruptcy case is the Trustee's assertion that the Debtors have made all of their mortgage payments in this case, and these payments have not been returned by Nationstar.

22. Despite receiving ample notice of the bankruptcy, Nationstar allowed the Debtors to be phoned multiple times a day, every day of the week, over a period exceeding six months in violation of § 362(a)(6). Also in violation of § 362(a)(6), Nationstar sent the Debtors at least two letters advising of a non-existent delinquency, and Nationstar even initiated a foreclosure

7

proceeding in state court in violation of § 362(a)(1), (3), (4) and (5). Nationstar has never been granted relief from stay in this case despite it proceeding as though it had. Accordingly, Nationstar's actions qualify as "intentional and deliberate" attempts to collect on the Debtors' pre-petition mortgage, making Nationstar liable for a "willful" violation of the automatic stay pursuant to § 362(k).

23. For its "willful" violation of the automatic stay, Nationstar will be liable for the Debtors' costs in traveling to multiple hearings that were continued to give Nationstar an opportunity to respond. The Debtors should also recover from Nationstar their attorneys' fees incurred in seeking relief from this court as a result of Nationstar's conduct.

24. Furthermore, the court finds that Nationstar's "willful" disregard for the Debtors' and the automatic stay is "egregious." The sheer volume of the approximately five hundred forty (540) phone calls made to the Debtors is shocking in and of itself.[1] The record shows that the Debtors are, and always have been, current on their mortgage. However, the Debtors' good payment history did not prevent Nationstar from sending letters advising of a delinquency, sending its representatives to the Debtors' home to take pictures, and even attempting to foreclose in response to a fancied default. Considering Nationstar's combined actions in this case, it is understandable why the Debtors experienced psychological and other health complications. While Nationstar's collection attempts appear to have stopped, it still has not responded to the allegations in the Motion—even after multiple continuances of the hearing to give it the opportunity to do so. Yet, in spite of its oblivious demeanor in regard to the Motion, Nationstar managed to file a notice of appearance and a motion for relief from stay in this case.

---

[1] As previously noted, the Debtors testified that they received three to four calls a day from Nationstar for over six months. The 540 figure reflects an approximation on the low end of the Debtors' estimation of three to four calls a day.

8

The record shows that Nationstar was repeatedly made aware of this bankruptcy case, and its habitual violations of the automatic stay despite this notice confirm that "appropriate circumstances" exist for an award of punitive damages under § 362(k).

25. In determining the punitive damages award, the court observes that Nationstar simply ignored the automatic stay with its six-month delay in correcting its actions. Nationstar even ignored reality itself by proceeding as if the Debtors were behind on their mortgage payments when they were current. At the same time, Nationstar's ignorance was also selective as it had enough awareness of this case to file a notice of appearance and a motion for relief from stay while the Motion that concerned its unlawful conduct was pending. Nationstar's willful disregard of the automatic stay resulted in the Debtors' being denied the protection they sought in filing bankruptcy, and this result is repugnant to the stay's aim of protecting economically disadvantaged debtors. In order for the automatic stay to be meaningful, creditors cannot be allowed to pick and choose when and how they will adhere to the automatic stay as Nationstar has done in this case. The court, therefore, awards the Debtors punitive damages to compel Nationstar to recognize and comply with the automatic stay in this and other cases in the future. Similar to the Riddick court's approach, the court will require Nationstar to pay the Debtors $100.00 per phone call for the approximately 540 phone calls made in violation of the stay.

It is therefore ORDERED that:

1. Nationstar shall pay the Debtors $300.00 in actual damages for their expenses in traveling to and from the three hearings conducted on the Motion. Nationstar shall also pay the Debtors punitive damages of $100.00 per phone call for 540 phone calls made to the Debtors over a six-month period in violation of the automatic stay, amounting to $54,000.00 in punitive damages.

9

      2.      Nationstar shall pay Thomas C. Flippin, the Debtors' attorney, $3,297.23 for the Debtors' legal fees and expenses incurred in connection with the Motion.

      3.      The combined total of $54,300.00 for the actual and punitive damages payable to the Debtors along with the $3,297.23 payable to Thomas C. Flippin shall be delivered to Mr. Flippin's office located at 1435 North Bridge Street, Elkin, North Carolina 28621 within fourteen days of the date of the entry of this order.

      4.      The court will conduct a compliance hearing on this Order on March 4, 2016 at 9:30 a.m. at the United States Courthouse, 200 West Broad Street, room 301, Statesville, North Carolina 28677.

**This Order has been signed electronically.**        **United States Bankruptcy Court**
**The Judge's signature and Court seal**
**Appear at the top of the Order.**